## ARTHUR NESS v. GREAT NORTHERN RAILWAY COMPANY, a Corporation.

### (142 N. W. 165.)

**Railroads — helper — pleading — defective apparatus — negligence.**

1. Plaintiff, while in defendant's employ as a helper in its shops at Devils Lake, met with an accident while assisting a machinist in forcing a bushing into a link by means of an air press. The injury was caused on account of certain blocking giving away, resulting in the link falling from the press table onto plaintiff's foot. The complaint charges negligence on defendant's part, first, in furnishing a defective air press; and, second, in furnishing unsuitable and defective blocking irons for the safe operation of said press.

Evidence examined, and *held* insufficient to authorize a submission to the jury of the question of defendant's negligence on either of the alleged grounds.

**Master — servant — defective apparatus — knowledge of servant — recovery.**

2. Both plaintiff and the machinist with whom he was engaged as a helper admit that there were no imperfections to their knowledge, either in the machinery or appliances in use by them at the time of the accident; and the proof also shows that there were a lot of pieces of iron near at hand suitable for blockings from which they were at liberty to make a selection. The blocking irons used had been in use for such purpose for a long time prior to the accident; and plaintiff and the machinist knew, or should have known, as much or more about their condition as the master. *Held*, in the light of such facts, that no recovery can be had, even though the irons used for blocking were not the most suitable for such purpose.

Evidence — negligence — insufficiency — recovery — cause of injury.

    3. Evidence, as to the alleged defect in the air press on account of certain play or looseness at the points where such press was fastened by bolts to side arms and to the table, examined and *held* insufficient upon which to base a recovery, it being apparent that such alleged defect could in no manner have caused the plaintiff's injury.

Opinion filed May 1, 1913.  Rehearing denied June 18, 1913.

Appeal from District Court, Ramsey County, *C. W. Buttz,* J.

From a judgment in plaintiff's favor, and from an order denying a motion for a new trial, defendant appeals.

Reversed with directions.

*Murphy & Duggan,* for appellant.

The burden was upon plaintiff to establish that the defendant failed to use ordinary care to have on hand a supply of suitable blocking. Cregan v. Marston, 126 N. Y. 568, 22 Am. St. Rep. 854, 27 N. E. 952.

The master cannot be held liable for injuries sustained from the use of defective material by the servant, when there was sufficient suitable and sound material on hand from which the servant might choose. Thyng v. Fitchburg R. Co. 156 Mass. 13, 32 Am. St. Rep. 425, 30 N. E. 169; Prescott v. Ball Engine Co. 176 Pa. 459, 53 Am. St. Rep. 683, 35 Atl. 224; Webber v. Piper, 109 N. Y. 496, 17 N. E. 216; Harley v. Buffalo Car Mfg. Co. 142 N. Y. 31, 36 N. E. 813; Kaare v. Troy Steel & I. Co. 139 N. Y. 369, 34 N. E. 901; Ross v. Walker, 139 Pa. 42, 23 Am. St. Rep. 160, 21 Atl. 157, 159; Kehoe v. Allen, 92 Mich. 464, 31 Am. St. Rep. 608, 52 N. W. 740; Hefferen v. Northern P. R. Co. 45 Minn. 471, 48 N. W. 1, 526, 16 Am. Neg. Cas. 254; Louisville, N. O. & T. R. Co. v. Petty, 67 Miss. 255, 19 Am. St. Rep. 304, 7 So. 351; Moran v. Brown, 27 Mo. App. 487; Cleveland, C. C. & St. L. R. Co. v. Brown, 20 C. C. A. 147, 34 U. S. App. 759, 73 Fed. 970; Allen v. Great Western & Ft. S. Iron Co. 160 Mass. 557, 36 N. E. 581.

Where the master has supplied an adequate and accessible stock of suitable appliances from which to make selection, and the imperfection of an instrumentality selected is or ought to have been apparent to the servant who selected it, the master cannot be held liable.  2 Labatt, Mast. & S. § 603, citing cases; 2 Labatt, Mast. & S. § 621, and cases

cited; Toohey v. Equitable Gas Co. 179 Pa. 437, 36 Atl. 314, 1 Am. Neg. Rep. 185; Ling v. St. Paul, M. & M. R. Co. 50 Minn. 160, 52 N. W. 378; Campbell v. New Jersey Dry Dock & Transp. Co. 61 N. J. L. 382, 39 Atl. 658, 4 Am. Neg. Rep. 191; Maloney v. United States Rubber Co. 169 Mass. 347, 47 N. E. 1012; Ellsbury v. New York, N. H. & H. R. Co. 172 Mass. 130, 70 Am. St. Rep. 248, 51 N. E. 415.

Opinion evidence cannot be presented to the jury when the facts in the case can be presented in such manner that jurors of ordinary intelligence and experience in the affairs of life can understand and duly appreciate them. Meehan v. Great Northern R. Co. 13 N. D. 440, 101 N. W. 183; Ferguson v. Hubbell, 97 N. Y. 507, 49 Am. Rep. 544; Muldowney v. Illinois C. R. Co. 36 Iowa, 462; Bemis v. Central Vermont R. Co. 58 Vt. 636, 3 Atl. 531; Ouverson v. Grafton, 5 N. D. 281, 65 N. W. 676.

It is the duty of the master to use ordinary care in his efforts to supply suitable apparatus with which his servant is to work. His duty is not measured by the *actual condition* of the apparatus, but by the *care he exercised,* in its selection. Louisville & N. R. Co. v. Mounce, 24 Ky. L. Rep. 1378, 71 S. W. 518.

The master is not an insurer. Lang v. Bailes, 19 N. D. 582, 125 N. W. 892.

It is the master's duty to exercise reasonable care in his efforts to provide a safe place in which his servant is to labor, and in furnishing apparatus with which he is to work. Hughley v. Wabasha, 69 Minn. 245, 72 N. W. 78; Cudahy Packing Co. v. Roy, 71 Neb. 600, 99 N. W. 231; International & G. N. R. Co. v. Bell, 75 Tex. 50, 12 S. W. 321; Lincoln Street R. Co. v. Cox, 48 Neb. 807, 67 N. W. 740; F. C. Austin Mfg. Co. v. Johnson, 32 C. C. A. 309, 60 U. S. App. 661, 89 Fed. 677; Chicago, B. & Q. R. Co. v. Oyster, 58 Neb. 1, 78 N. W. 359; Gulf, C. & S. F. R. Co. v. Beall, — Tex. Civ. App. —, 43 S. W. 606; Armour & Co. v. Russell, 6 L.R.A.(N.S.) 602, 75 C. C. A. 416, 144 Fed. 614; Chicago & E. I. R. Co. v. Garner, 78 Ill. App. 281; Belleville Pump & S. Works v. Bender, 69 Ill. App. 189; Lancaster Cotton Oil Co. v. White, 32 Tex. Civ. App. 608, 75 S. W. 339.

The vice of an erroneous charge upon the law is not cured by a later correct statement of the law. The jury does not know which one is

correct, and invariably the one most favorable to plaintiff, in such cases, is adopted by the jury, and prejudice to defendant is presumed. Armour & Co. v. Russell, 6 L.R.A.(N.S.) 602, 75 C. C. A. 416, 144 Fed. 614; Lincoln Street R. Co. v. Cox, 48 Neb. 807, 67 N. W. 740; F. C. Austin Mfg. Co. v. Johnson, 32 C. C. A. 309, 60 U. S. App. 661, 89 Fed. 677; State v. Kruse, 19 N. D. 207, 124 N. W. 385; First Nat. Bank v. Lowrey Bros. 36 Neb. 290, 54 N. W. 568; Bryant v. Modern Woodmen, 86 Neb. 372, 27 L.R.A.(N.S.) 326, 125 N. W. 621, 21 Ann. Cas. 365; Barr v. State, 45 Neb. 458, 63 N. W. 856.

There was error in the taxation of costs, or witnesses' fees. Such fees are prescribed by statute, and are only allowed for attendance before the court. Rev. Codes 1905, § 2615.

Constructive presence of witnesses is not sufficient. 30 Am. & Eng. Enc. Law, 1178; McArthur v. State, 41 Tex. Crim. Rep. 635, 57 S. W. 847; The Michigan, 52 Fed. 509; State v. Willis, 79 Iowa, 326, 44 N. W. 699.

*Fredrick T. Cuthbert* and *Arthur R. Smythe,* for respondent.

The master must use ordinary and reasonable care not to subject his servant to unreasonable or extraordinary dangers by sending him to work on dangerous machines or with dangerous tools and appliances. Thomp. Neg. §§ 3786–3794.

The master must inspect the place and the appliances, and he is chargeable with knowledge of what a reasonable inspection would disclose. St. Louis, I. M. & S. R. Co. v. Harper, 44 Ark. 524; Van Dusen v. Letellier, 78 Mich. 492, 44 N. W. 572; Siemsen v. Oakland, S. L. & H. Electric R. Co. 134 Cal. 494, 66 Pac. 672; Eaton v. New York C. & H. R. R. Co. 163 N. Y. 391, 79 Am. St. Rep. 600, 57 N. E. 609, 8 Am. Neg. Rep. 103; Nord Deutscher Lloyd S. S. Co. v. Ingebregsten, 57 N. J. L. 402, 51 Am. St. Rep. 604, 31 Atl. 619, 16 Am. Neg. Cas. 673; Tedford v. Los Angeles Electric Co. 134 Cal. 76, 54 L.R.A. 85, 66 Pac. 76; Walkowski v. Penokee & G. Consol. Mines, 115 Mich. 629, 41 L.R.A. 33, 73 N. W. 895.

He is also obliged to repair and to keep in a reasonably safe condition machinery used by his servants. Higgins v. Williams, 114 Cal. 176, 45 Pac. 1041; Beeson v. Green Mountain Gold Min. Co. 57 Cal. 20, 13 Am. Neg. Cas. 461; Elledge v. National City & O. R. Co. 100 Cal. 282, 38 Am. St. Rep. 291, 34 Pac. 720; Lehigh Valley Coal Co.

v. Warrek, 28 C. C. A. 540, 55 U. S. App. 437, 84 Fed. 866; Bailey
v. Rome, W. & O. R. Co. 139 N. Y. 302, 34 N. E. 918; Moynihan v.
Hills Co. 146 Mass. 586, 4 Am. St. Rep. 348, 16 N. E. 574, 15 Am.
Neg. Cas. 602; Houston & T. C. R. Co. v. Dunham, 49 Tex. 181; Carter
v. Oliver Oil Co. 34 S. C. 211, 27 Am. St. Rep. 815, 13 S. E. 419;
Jones v. Phillips, 39 Ark. 26, 43 Am. Rep. 264, 13 Am. Neg. Cas. 291;
Gillenwater v. Madison & I. R. Co. 5 Ind. 339, 61 Am. Dec. 101;
Wells v. Coe, 9 Colo. 159, 11 Pac. 50, 13 Am. Neg. Cas. 587; Houston
& T. C. R. Co. v. Marcelles, 59 Tex. 334; Rice v. King Philip Mills,
144 Mass. 237, 59 Am. Rep. 80, 11 N. E. 101.

Lund was in defendant's employ. He was doing his work in the
ordinary and recognized manner, and was not negligent. But, if he
was negligent, the defendant would still be liable where Lund's negli-
gence commingled with the unsafe and defective machinery to cause the
injury. Rev. Codes 1905, § 4400, 7 Thomp. Neg. § 4858; Cudahy
Packing Co. v. Anthes, 54 C. C. A. 504, 117 Fed. 118; Colley v. South-
ern Cotton Oil Co. 120 Ga. 258, 47 S. E. 932; Southern Bauxite Min.
& Mfg. Co. v. Fuller, 116 Ga. 695, 43 S. E. 64; Chicago, W. & V. Coal
Co. v. Moran, 210 Ill. 9, 71 N. E. 38; American Tin-Plate Co. v. Wil-
liams, 30 Ind. App. 46, 65 N. E. 304; Buehner v. Creamery Package
Mfg. Co. 124 Iowa, 445, 104 Am. St. Rep. 354, 100 N. W. 345; Trade-
water Coal Co. v. Johnson, 24 Ky. L. Rep. 1777, 61 L.R.A. 161, 72
S. W. 274; McGinn v. McCormick, 109 La. 396, 33 So. 382; Missouri,
K. & T. R. Co. v. Hutchens, 35 Tex. Civ. App. 343, 80 S. W. 415;
Czarecki v. Seattle & S. F. R. & Nav. Co. 30 Wash. 288, 70 Pac. 750;
Grant v. Keystone Lumber Co. 119 Wis. 229, 100 Am. St. Rep. 883,
96 N. W. 535; Ruemmeli-Braun Co. v. Cahill, 14 Okla. 422, 79 Pac.
260.

On defendant's motion for a directed verdict, the trial court and the
Supreme Court will assume the evidence of plaintiff undisputed, and
will give to it the most favorable construction. Northern P. R. Co. v.
Vidal, 106 C. C. A. 661, 184 Fed. 707; Bohl v. Dell Rapids, 15 S. D.
619, 91 N. W. 315; Marshall v. Harney Peak Tin Min. Mill & Mfg.
Co. 1 S. D. 350, 47 N. W. 290; Merchants' Nat. Bank v. Stebbins, 15
S. D. 280, 89 N. W. 674; Sanford v. Duluth & D. Elevator Co. 2 N. D.
10, 48 N. W. 434; Spokane Grain Co. v. Great Northern Exp. Co. 55
Wash. 545, 104 Pac. 794; Roe v. Standard Furniture Co. 41 Wash.

546, 83 Pac. 1109; Illinois C. R. Co. v. Futrell, 141 Ky. 847, 133 S. W. 983.

A verdict on conflicting evidence will not be reviewed or disturbed by the appellate court on appeal. Klein v. Atchison, T. & S. F. R. Co. 12 Cal. App. 285, 107 Pac. 147; Rio Grande Western R. Co. v. Boyd, 44 Colo. 119, 96 Pac. 781; Murphy v. Southern P. Co. 31 Nev. 120, 101 Pac. 322, 21 Ann. Cas. 502; Chicago, R. I. & P. R. Co. v. Mashore, 21 Okla. 275, 96 Pac. 630, 77 Ann. Cas. 277; Tacoma v. Bonnell, 58 Wash. 593, 109 Pac. 60; Chicago City R. Co. v. McClain, 211 Ill. 589, 71 N. E. 1103; Nortonsville Coal Co. v. Whited, — Ky. —, 124 S. W. 397; Pittsburg, C. C. & St. L. R. Co. v. Blum, — Ky. —, 125 S. W. 300; Parker v. United R. Co. 154 Mo. App. 126, 133 S. W. 137; Texas & P. R. Co. v. Dominguez, — Tex. Civ. App. —, 135 S. W. 681; Buel v. Chicago, R. I. & P. R. Co. 81 Neb. 430, 116 N. W. 299; Rathjen v. Chicago, B. & Q. R. Co. 85 Neb. 808, 124 N. W. 473; Kirkpatrick v. Aetna L. Ins. Co. 141 Iowa, 74, 22 L.R.A.(N.S.) 1255, 117 N. W. 1111; Nilson v. Horton, 19 N. D. 187, 123 N. W. 397; Lowry v. Piper, 20 N. D. 637, 127 N. W. 1046.

On appeal from a judgment rendered on a general verdict the courts will give to the evidence of plaintiff all the legitimate and reasonable inferences that the jury might deduce therefrom. Chicago Terminal Transfer R. Co. v. Vandenberg, 164 Ind. 470, 73 N. E. 990, 18 Am. Neg. Rep. 36; Lunde v. Cudahy Packing Co. 139 Iowa, 688, 117 N. W. 1063; Sheppard v. Wichita Ice & Cold Storage Co. 82 Kan. 509, 28 L.R.A.(N.S.) 648, 108 Pac. 819; Hartzler v. Metropolitan Street R. Co. 140 Mo. App. 665, 126 S. W. 760; Louisville & N. R. Co. v. Eckman, 137 Ky. 331, 125 S. W. 729.

The condition of the machinery and appliances at the time of the injury is a proper subject for expert testimony. Thomp. Neg. §§ 7751, 7752; Schweikert v. John R. Davis Lumber Co. 145 Wis. 632, 130 N. W. 508; Erickson v. American Steel & Wire Co. 193 Mass. 119, 78 N. E. 761; Murphy v. Marston Coal Co. 183 Mass. 385, 67 N. E. 342; Dardanelle Pontoon Bridge & Turnpike Co. v. Croom, 95 Ark. 284, 30 L.R.A.(N.S.) 360, 129 S. W. 280; Zarnik v. C. Reiss Coal Co. 133 Wis. 290, 113 N. W. 752; Craig v. Benedictine Sisters Hospital Asso. 88 Minn. 535, 93 N. W. 669; Anderson v. Fielding, 92 Minn. 42, 104 Am. St. Rep. 665, 99 N. W. 357, 16 Am. Neg. Rep. 92.

25 N. D.—37.

It is the duty of the master to furnish safe and suitable materials for the use of the servant, and to keep them in repair and order. Northern P. R. Co. v. Herbert, 116 U. S. 642, 29 L. ed. 755, 6 Sup. Ct. Rep. 590; Hough v. Texas & P. R. Co. 100 U. S. 213, 25 L. ed. 612; Cameron v. Great Northern R. Co. 8 N. D. 124, 77 N. W. 1018, 5 Am. Neg. Rep. 454, Thomp. Neg. § 484; Brickwood's Sackett, Instructions to Juries, §§ 1336–1477; Davy·v. Great Northern R. Co. 21 N. D. 43, 128 N. W. 311.

The costs in this case were properly taxed. During the continuance of a cause, a witness may collect compensation for the time he is in attendance at court from the time of the continuance until the time fixed for trial. 30 Am. & Eng. Enc. Law, 1178, 22 Enc. Pl. & Pr. 1339, 1340; 40 Cyc. 2166; Smith v. Nelson, 23 Utah, 512, 65 Pac. 485; Barber v. Parsons, 145 Mass. 203, 13 N. E. 491; Ferguson & M. Lumber Co. v. Tiede, 130 Mo. App. 269, 109 S. W. 850.

FISK, J.  Plaintiff and respondent sustained personal injuries while in defendant's employ in its machine shops at Devils Lake; and he brought this action to recover damages therefor, alleging that such injuries were occasioned by the negligence of the defendant in failing to provide suitable machinery and tools for doing the work in which plaintiff was engaged. He recovered judgment in the court below in the sum of $1,400, and costs. Thereafter defendant moved for judgment notwithstanding the verdict or in the alternative for a new trial, which motion was denied and the appeal is both from the order and from the judgment.

The statement of facts made in the brief of respondent is, in the main, correct, and such statement is substantially as follows:

"Plaintiff was engaged as a machinist's helper by defendant company at its shops in Devils Lake. At the time of receiving the injury to his foot he was acting as a helper to Carl Lund, a machinist, and was under Lund's control and authority. They were working at an air press, engaged in pressing a bushing into a link which is a part of a locomotive. The link which fell on plaintiff's foot weighed about 150 pounds.

The air press and its appurtenances consist of a table with an iron top or surface about 5 inches thick and 3 feet wide, and 5 feet long.

The legs of the table or frame work upon which this iron cover is placed is made of wood. The air cylinder and piston are set or suspended over this table by two arms made of wrought iron, having hooks or lips on each, which are bent to a right angle and fit underneath the iron that forms the surface of the table, and over flanges on the lower head of the air cylinder respectively, and bolted to their respective fastenings. Such arms or bars of iron are about 8 inches wide and 2 inches thick. Where these arms or upright pieces are fastened to the table and to the cylinder head there was some play or lost motion owing to the fact that the respective irons forming the top of the table, the flange on the cylinder head, and the arms, were not bolted or fastened snugly or securely together.

The piston of the press has a 9-inch stroke, and when at the farthest possible distance from the table it is 18 inches, its closest possible distance is 9 inches. When the air is turned on, the piston moves quite rapidly, but not fast enough to strike a blow. Such air press has a pressure of 14 tons. Immediately under the piston, in the face of the table, is a hole, which is left open when pushing out bushing, etc., but when putting in bushing it must necessarily be covered with blocking or bars of iron. To use the press effectively for the work Lund and his helper were doing, it was necessary to block the link or rocker arm upon blocks, so that the piston of the air press would reach the bushing in order to drive or push it in. For the purpose of this blocking the railway company furnished what is known or called "channel irons," and such irons had been in use for a long time prior to the accident and for a short time thereafter, at which time other irons were furnished for such purpose. The testimony shows that the flanges of these channel irons were partly broken off, and there were some pieces cracked or chipped off along the edges. (Such fact, however, did not render the same unfit for such purpose.)

Lund, the machinist, and Ness, his helper, took this link or rocker arm to the air press, where Lund arranged the blocking upon which to lay such link, and he and plaintiff lifted the link onto this blocking. Ness held or steadied the link while Lund turned on the air by a valve which drove the piston down. When the bushing had gone about three quarters of the way into the hole it stopped. The 14 tons' pressure being unable to move it farther, Lund took a sledge hammer and

hit the blocking on top of the bushing in order to give it a fresh start, whereupon the blocking for some reason gave way, and the link fell from the table onto the plaintiff's foot, causing the injury complained of.

The air press is correctly shown by photographs which were introduced in evidence, from which we are enabled to understand the mechanism thereof much better than would be possible from a mere description of such machine. The testimony discloses that this link or rocker arm, into the end of which Lund and the plaintiff were engaged in inserting such bushing, could have been and properly should have been, entirely blocked up on such table to the proper height, instead of being held at one end by the plaintiff, but presumably plaintiff obeyed Lund's instructions in holding the same in his hand, and it is fair to assume that the foreman of the shop, who frequently passed by such press while in operation, had knowledge of and presumably acquiesced in the method thus employed by such machinist. The testimony also discloses that the machinist was not restricted to the use of these particular channel irons for blocking purposes, but that there were numerous other suitable irons of different sizes in and about the shop which he was at liberty to select at his discretion, and the custom was for the different workmen to get whatever tools and blockings they wanted. Lund testified that the channel irons which were used were perfectly satisfactory for the purpose. The blocking which was used on the occasion in question consisted of these two channel irons, which were placed on the table over the hole and under the piston, then the end of the link containing the hole into which the bushing was to be forced was placed on top of these irons, and the bushing on top of such link over the table hole, and another flat piece of iron about 8 inches long on top of the bushing. The piston was then forced down on top of such blocking, forcing the bushing into the link about three quarters of the way when it stopped, and while plaintiff was still holding such link, Lund, as before stated, struck a glancing blow with a sledge hammer on top of such blocking, whereupon the blocking gave way and the link fell on plaintiff's foot as above stated.

In view of our conclusion that the trial court erred in denying the motion for a directed verdict, we need notice but the one assignment of error predicated upon such ruling.

As stated by appellant's counsel, the negligence alleged in the complaint is, first, that the air press was defective; and, second, that the irons furnished for blockings were defective and unsuitable for such purpose. In order to sustain the recovery, therefore, the proof must reasonably tend to disclose that the proximate cause, or at least one of the proximate causes of the accident, was either one or both of these alleged defects.

The rule which must guide us in determining whether there is any evidence sufficient to require its submission to the jury upon either of such issues is well settled. All conflicts in the evidence must be disregarded, and such evidence is to be construed most favorably to the plaintiff.

As stated by this court in Cameron v. Great Northern R. Co. 8 N. D. 124, 77 N. W. 1016, 5 Am. Neg. Rep. 454, "the test is whether there is any competent evidence in the case reasonably tending to sustain the cause of action alleged; and, if the evidence is such that intelligent men may fairly differ in their conclusions thereon upon any of the essential facts of the case, it is error to withdraw the evidence from the consideration of the jury." See also Zink v. Lahart, 16 N. D. 56, 110 N. W. 931, and Hall v. Northern P. R. Co. 16 N. D. 60, 111 N. W. 609, 14 Ann. Cas. 960.

In the light of the above rule we will first examine the evidence with reference to the alleged negligence of defendant in failing to furnish suitable blocking irons for use in operating said air press. The testimony seems to be uncontradicted that the channel irons which were used at the time of the accident are the same irons which had been used for such purpose ever since the air press was installed some two years prior to the accident, or at least for a considerable length of time. The testimony also discloses that such irons were used for some time after the accident, and then other irons were furnished for use in place of the old ones. It seems to be undisputed that the flanges on these channel irons were broken or chipped off in many places, but it does not appear that they were for this reason unsuitable for the use to which they were put, although the witness Hann gave it as his opinion or conclusion, based on a description of the blocks, "that if the same play was in this machine at the time of the accident that they would have a number of these accidents, and an accident would almost be unavoidable no matter

how they placed the blocks; that is, if they were in the condition they said they were." And the witness Tideman testified that he thought the regular steel irons are better blocking than the channel irons. But plaintiff's witness, Lund, the machinist who placed these blocks on the air press table just prior to the accident, testified: "We get the different pieces of iron we use for blocking there on the press. There were quite a few of them of different shapes and sizes lying around the press. If we didn't see what we wanted we would get it; we had all we wanted there." And referring to the two particular pieces of iron in question, he testified: "The uprights or perpendiculars are two channel pieces, and are intact. I examined these pieces of iron right along before the accident. We used them every day pretty near. They were pieces we used to cover the hole with, and were considered good for the purpose." This witness also testified that there were a lot of pieces of iron within 10 or 15 feet from the press, of different shapes, and he supposes he could have used them to build up the 4 inches from the table to the bushing and the link, and if there wasn't a piece of iron at the press that suited his purpose he would go and get one; and both this witness and the plaintiff Ness made a written statement, after the accident, to the effect that there was no imperfection in the machinery or appliances.

There is much more testimony bearing upon this question, but it is all of like character, and we are firmly convinced, from a consideration of all such testimony, that there was no room for intelligent men to differ as to the fact that such channel irons were suitable for the use to which they were put, and that the accident cannot be attributed to any defects therein. Furthermore, we fail to see how actionable negligence can be predicated upon the use of such channel irons, for the obvious reason that the testimony conclusively shows that both Lund and the plaintiff knew, or must have known, as much or more about the condition of such irons as the master or vice principal knew, for they were handling and using the same almost daily, and sometimes more frequently, and it is undisputed that plenty of other pieces of iron suitable for blocking were near at hand and at their disposal. Surely under these conditions the master cannot be held liable, even though such channel irons were not the most suitable for the purpose. Ling v. St. Paul, M. & M. R. Co. 50 Minn. 160, 52 N. W. 378. See also Labatt, Mast. & S.

§§ 603–621, and cases cited. In § 603 this author states the rule as follows: "It is well settled that, where the master has provided an adequate and readily accessible stock of suitable appliances in good condition, from which to make a selection, and the imperfection of an instrumentality selected therefrom was, or ought to have been, apparent to the servant who selected it, the master cannot be held responsible for injuries which are sustained by the use of that instrumentality, whether the sufferer be the servant himself who made the selection or a co-employee." The above rule is, we believe, in accordance with the unanimous holdings of the courts.

We are forced to the conclusion, therefore, that no recovery can be sustained upon this alleged ground of negligence.

This brings us to a consideration of the only other ground of negligence relied on by plaintiff; to wit, that the air press was defectively constructed. In this connection we deem it proper to state that, while the complaint alleges such fact in a general way, it is very apparent that the main act of negligence relied on is the alleged failure of defendant to furnish suitable blocking irons for use in the operation of such press. This is made quite clear from an examination of the complaint and also of the bill of particulars furnished on defendant's demand. The portion of the complaint with reference to defendant's alleged negligence is as follows: *"That said air press was defectively constructed, and the tools and irons used in connection with said air press were not the proper tools and irons for that purpose, and that said air press tools and irons were imperfectly constructed, defective and unsafe, and unfit for the purposes for which* they were being used, and the same were inadequate, and that said imperfect defectiveness, inadequacy, unsafeness, and unfitness could have been discovered and known by the use and exercise by said defendant of ordinary care and diligence, and that the same were, at the time aforesaid, known to said defendant and the same were unknown to this plaintiff. . . . That the said injury was wholly without fault or negligence of this plaintiff whatsoever, and was caused on account of the defective condition of said machinery and tools as more specifically herein set out."

And the bill of particulars thus furnished is as follows:

"You will please take notice that the following is a bill of particulars as demanded by you in the above-entitled action, that is to say, that the

plaintiff was injured by reason of defective construction of tools and irons used in connection with said air press, and not the proper tools and irons for that purpose, and said air-press tools and irons were imperfectly constructed, defective and unsafe, and unfit for the purposes for which they were used, and the same were inadequate, and not properly constructed, and the tools and irons used in connection with the work being performed were not proper irons for the purposes for which they were used, and that at the time of the injury they were engaged in the work of pressing bushing into a link, and that the force of power furnished by said air press was not sufficient, and that the machinist in charge of said air press, to assist said air press in driving said bushing into the link, struck some of the irons with a sledge, causing said irons to fall, and that said irons fell, one of the irons upon the foot of the plaintiff, crushing it, as alleged in the complaint; that the irons referred to above were irons used to build up the platform upon the bushing and below the piston rod, for the piston rod to rest upon to drive the bushing into the link; that said irons so used to build a platform upon said bushing extending upward for the piston rod to drive said bushing in by presssure upon said irons were not irons constructed for that purpose, but were pieces of machinery, and that said pieces of machinery were furnished by the company, and the only pieces of iron or tools furnished by the defendant for that purpose, and that said pieces of iron so placed as aforesaid, being struck by the machinist in charge by a sledge hammer as aforesaid, caused said irons and the link upon which the machinist and plaintiff were working to fall upon plaintiff's foot from the table upon which the same were laying while said work was being done, thus crushing the foot of the plaintiff; that had there been sufficient power furnished by said air press it would not have been necessary for the machinist to have struck the iron as aforesaid, and had the defendant furnished proper irons, as aforesaid, for that work, the accident could have been avoided; that plaintiff was not an expert nor a machinist, and did not know of the defects or the liability of accident on account of the defects as herein stated."

It is therefore quite apparent, as above stated, that the chief, and in fact the sole, act of negligence relied on at the time the bill of particulars was prepared and served, was the alleged failure of defendant to furnish proper irons for blocking, and it apparently did not occur

to plaintiff that any other ground existed until sometime later. We refer to this merely as a circumstance proper to be considered in determining whether plaintiff established a sufficient case to require a submission to the jury of the question as to whether the air press was defectively constructed, and if so, as to whether such defect was a proximate cause of the plaintiff's injury. We assume that such question is in the case, notwithstanding the failure to mention such ground in the bill of particulars; for at the trial an attempt, without objection, was made to prove the same. We are therefore confronted with the question whether there is a substantial conflict in the testimony relative to such alleged defect in the construction of the air press which in any way can be said to have been a proximate cause of the plaintiff's injury. The specific defect relied on at the trial consists of a slight looseness or play at the ends of the side arms where they are bolted to the table and to the lower portion of the cylinders of the press. What is the status of the proof on this point? Both the plaintiff's witness Lund and the plaintiff signed written statements after the accident, to the effect that this press was in perfect working order at the time the accident occurred, and had no defects whatever, to their knowledge, and the accuracy of such statements was vouched for by them on the witness stand. The proof discloses that there was a slight play or lost motion at these points, the exact amount thereof being somewhat in dispute. It is not disputed that when the pressure is off there is both a horizontal and vertical play in the cylinder to a slight extent, but the proof discloses, and we think it beyond question, that no play whatever exists or can exist after the 14 tons' pressure is applied, and that on applying such pressure the piston is necessarily forced in a straight line towards the table. The pressure was on at the time of the accident, and the immediate cause of such accident evidently was the slanting blow struck by Lund with the sledge hammer on top of the block which rested on the bushing. It cannot be said, however, that in striking such blow Lund was not pursuing a proper, usual, and customary practice. The crucial question, therefore, is whether plaintiff has established that the slight looseness of the bolts fastening the side arms to the cylinder and table was a proximate cause of his injury, and that defendant was negligent in permitting such play to exist. These side arms are about 8 inches in width and 2 inches thick, and

made of wrought iron. The evidence is undisputed that the press at the time of such accident was and ever since has been in the same general condition as it was in when first installed, some two years prior, with the exception of the addition of an oil cylinder, which does not materially affect the question here involved. Such press was used for about two years prior to the accident, and had been used ever since such accident, down to the time of the trial,—two years,—without any change whatever, and so far as the record discloses, it worked perfectly during all this time. While there is a great deal of testimony in the record, of a conflicting nature, upon the question of the play or looseness at the ends of the side arms which extend from the table to the cylinders, there can be no doubt from such testimony, and we must accept it as a fact, that there was more or less play, both vertically and horizontally, when the power was not applied. But it nowhere appears that this in any way caused, or could have caused, the accident, and the jury could not properly so find. Plaintiff relies upon the testimony of Hann and Robinson, who were permitted to state as a conclusion that with such play or looseness the press would be more dangerous, but neither of these witnesses ventured an opinion as to the real cause of the accident. They did not nor could they, in the light of the other testimony, claim that such accident was caused by this play or looseness.

The machinist Lund, who was plaintiff's chief witness, and who was necessarily very familiar with this press, having operated it frequently, testified as follows: "At the time of the accident there might be a little play here in these arms. I would say the play is about the same as it is now. . . . I don't mean to say there was any imperfection or defect in the machinery. The machinery was all right." True, the latter testimony was stricken out on plaintiff's motion, but such ruling was manifestly erroneous. This witness, however, gave in effect the same testimony thereafter. Shortly after the accident he made and signed a written report of such accident, in which report he stated in substance that there were no defects in the machinery, tools, or appliances, and the plaintiff made a similar report, which was also introduced in evidence. Both Lund and the plaintiff swore at the trial that such reports were correct.

It would serve no useful purpose to quote at length from the testimony. It is sufficient to say that, from a careful consideration of the

entire evidence, we have no hesitancy in concluding therefrom that the air press was in reasonably good working condition, and that, in any event, the slight play or the so-called lost motion could not possibly have caused the blocking to give way, for the conclusive reason, to our minds, that there could have been no such looseness when the 14 tons' pressure was applied, as it was when the accident occurred. With the bushing pressed two thirds of its way into the hole, as the evidence dis-closes it was, and with a 14 tons' pressure thereon, it does not require a mechanical expert to know that it would be an utter impossibility for the piston, or the cylinders operating such piston, to assume a slant-ing line toward the table, without bending or breaking the heavy iron side arms connecting such cylinders to the table below; and it is equally absurd to contend, under these circumstances, that there could possibly have been at such time any play or looseness whatever at the ends of such arms. This being self-evident, the inevitable conclusion must follow that the cause of the blocking giving way must be accounted for on some other theory; and it is very apparent that the true cause was the failure of Lund to properly build up the blocking, and for which failure the defendant is, of course, not responsible. While we regret plaintiff's serious injury, and sympathize with him in his mis-fortune, we, at the same time, feel that our duty is plain, and that we must discharge it by directing the lower court to set aside the judg-ment herein, and to enter a judgment in defendant's favor, and it is accordingly so ordered.