## GREAT NORTHERN RY. CO. v. JOHNSON.

(Circuit Court of Appeals, Eighth Circuit.   July 24, 1913.)

No. 3,822.

1. MASTER AND SERVANT (§§ 90, 97*)—MASTER'S LIABILITY FOR INJURY TO SERV-
   ANT—MEASURE OF CARE REQUIRED.

   Where an employer has made reasonable provision for the safety of
   his employés, such as an ordinarily prudent man would make for his own
   safety if he was doing the work himself, he has as a rule performed his
   duty to his employés, and he is not bound to anticipate and provide
   against accidents, the danger of which is not apparent or which cannot
   be ascertained by the exercise of ordinary care and does not become ap-
   parent until after the accident has happened.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 139.
   163; Dec. Dig. §§ 90, 97.*]

2. MASTER AND SERVANT (§ 123*)—MASTER'S LIABILITY FOR INJURY TO SERVANT
   —APPLIANCES.

   The condition of the implements or material furnished to an employé
   to work with must be such as to suggest to an ordinarily careful man
   that there is danger in their use before the employer can be charged with
   negligence in not providing against it.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 233.
   234; Dec. Dig. § 123.*]

3. MASTER AND SERVANT (§§ 97, 219*)—MASTER'S LIABILITY FOR INJURY TO
   SERVANT—NEGLIGENCE—ASSUMED RISK.

   Plaintiff was a boiler maker employed in the shops of defendant rail-
   road company.  While he and other employés were engaged in replacing
   the flues of a locomotive boiler, using some old and some retipped flues,
   and he was expanding the end of a flue to tighten it in the flue sheet,
   he was injured by a piece which broke from the flue and struck him in the
   eye.  He charged negligence in furnishing for the work flues which were
   old and unfit.  The only way to test a flue was by actually attempting to
   install it in the boiler.  Plaintiff and seven other witnesses, all experienced
   in such work, testified that they had never known a piece to break out of
   a flue before under such circumstances.  *Held* that, where experts could
   not anticipate danger, defendant could not be charged with negligence in
   not doing so and providing against it, and that the injury arose from an
   ordinary risk of the employment which plaintiff assumed.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 163,
   610–621; Dec. Dig. §§ 97, 219.*

   Assumption of risk incident to employment, see note to Chesapeake &
   O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the District Court of the United States for the Dis-
trict of North Dakota; Charles F. Amidon, Judge.

Action at law by Charles Johnson against the Great Northern Rail-
way Company.  Judgment for plaintiff, and defendant brings error.
Reversed.

C. J. Murphy, of Grand Forks, N. D. (Fred S. Duggan, of Grand
Forks, N. D., on the brief), for plaintiff in error.

Seth W. Richardson, of Fargo, N. D. (William H. Barnett, of Far-
go, N. D., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and WIL-
LARD, District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CARLAND, Circuit Judge. On the 7th day of January, 1908, Johnson was in the employ of the railway company as a boiler maker at Minot, N. D. While employed in making tight certain flues of a locomotive boiler, a piece of a flue upon which he was working, V-shaped, and about the size of a dime, broke from the flue and struck him in the eye. He brought suit against the railway company to recover damages on account of his injury, alleging that the company was guilty of negligence in furnishing him a flue that was old, worthless, and worn out, and which was of such poor material by reason of its long use that it could not withstand the force used in the work necessary to be done upon it; that the railway company knew of this defective condition of the flue, or might have known it by the exercise of ordinary care. Upon the trial of the action a verdict was rendered in his favor, and, judgment having been entered thereon, the railway company has removed the case here, assigning as error the ruling of the court in refusing to direct a verdict in its favor. The case was here at a former term of this court. 176 Fed. 328, 99 C. C. A. 618. From the record as then presented, we were of the opinion that there was no evidence sufficient to go to the jury that the flue from which the piece was broken was old, worthless, worn out, and defective, as alleged in the complaint. It is claimed that this defect in the evidence was supplied at the second trial. It is doubtful whether this is so, but we pass that question for the purpose of determining whether there was sufficent evidence to warrant the jury in finding that the railway company was guilty of negligence.

In order that this question may be better understood, a more detailed statement of the facts will be made. The locomotive boiler on which Johnson was employed at the time of his injury had 202 flues. These flues extended from the fire box end to the smokestack or front end of the locomotive. At the smokestack or front end these flues extended through holes, in what is called the flue sheet, one-half to three-quarters of an inch. In order to make the space around the flue, where it passes through the flue sheet, water tight, the flue is expanded. One of the ways in which the flue is expanded is to drive a round iron pin, tapered at one end, six or seven inches long, into the end of the flue where it extends through the flue sheet. At the time Johnson was injured he was in the front end of the locomotive boiler, engaged in expanding all flues that showed any evidence of leakage; that is, leaking water from around the flues at the point where they pass through the flue sheet. After he had inserted the pin into the flue, he thus describes the manner of his injury:

"We had some oil there that we usually use to start it; that—I don't remember whether we had any at that time; we were in a hurry on that job, and I started to push it in, and I had a small hammer there to pound it in, and I just started to pound it, and a piece flew off the flue."

Flues are of malleable iron or steel, so far as the record shows, so that they may be worked. Except as the water may affect that portion of the flue between the fire box and the flue sheet, flues may last for two or more years without repair. The part of the flue which extends into the fire box becomes defective by reason of the action

of fire, and when this occurs the flue is taken out and retipped. The portion of the flue which extends through the flue sheet is not exposed to water or fire enough to injure it. The boiler upon which Johnson was working was being retipped, for which purpose new, old, and retipped flues were used. One Collins was in charge of the work. One Starr, who was also engaged in reflueing the boiler, testified that he had a conversation with Collins, as follows:

"I brought his attention to the flues and told him some of them I did not think were flues fit to put in the boiler. Collins replied, 'Go ahead, and put the flues in anyway;' and if they could not be used they could be ripped out and others put in."

Starr also testified that some of the flues were old, very thin and light, others crystallized—holes in them.

The only final test as to whether a flue can be expanded so as to prevent leaking where it passes through the flue sheet is the actual attempt to install the flue in the boiler. Johnson and seven other boiler makers, engineers, and roundhouse foremen testified that in all their experience they had never known a piece to break out of a flue, new or old, under circumstances such as detailed by Johnson. And there was no evidence to the contrary. The information imparted by Collins to Starr was simply to the effect that some of the flues were not good as flues; that is, for the purpose for which they were to be placed in the boiler. No interpretation can be placed upon the language used by Starr to give it any force as a notice to Collins that the flues were dangerous to employés to work upon. Conceding that the flue upon which Johnson was working was old and brittle, was there evidence of negligence upon the part of the railway company which would warrant the jury in finding a verdict against it? The fact that Johnson was injured as alleged, as between him and the railway company, is no evidence of negligence on the part of the company. Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361. The question then comes to this: How could the railway company have obtained, by the exercise of ordinary care, any knowledge that the flue from which the piece broke off was dangerous to work upon? Johnson, a boiler maker, did not know it, nor did the seven other witnesses know it. Must the ordinary care required of the railway company be such as to compel it to investigate and ascertain that which experts in a particular business do not know, and never heard of, especially in view of the fact that whether or not a flue would throw off pieces of itself could not be determined in advance of the actual attempt to install it in the flue sheet, and in view of the further fact that, of all the flues that had been so expanded, eight witnesses, including Johnson, had never heard of such an occurrence?

[1] The only way to test the flue, as we have said, would be by actually attempting to install it in the locomotive boiler. This work of installing old and new flues had been going on for years at Minot and other places on a great railroad system. And if the breaking of a flue in the manner and under the circumstances detailed by Johnson had never occurred before, how could any degree of ordinary

care foresee the accident? An employer is bound to use ordinary care to furnish his employés with reasonably safe and proper means and appliances for doing the work which such employés are set about, but he does not become a guarantor of the safety of his men. When he has made reasonable provision for their safety, such as an ordinarily prudent man would make for his own safety if he was doing the work himself, he has, as a rule, performed his duty to his employés and servants. He is not bound to anticipate and provide against accidents to his men which are not apparent or which cannot be ascertained by the exercise of ordinary care and do not become apparent until after the accident has happened.

[2] The condition of the implements or material must be such as to suggest to an ordinarily careful man that there is danger before an employer can be charged with negligence in not providing against it.

There is no proof in the record that the railway company knew, or could have known by the exercise of ordinary care, that the pinning of a flue, old or new, would cause a piece to break from the same under the circumstances as detailed by Johnson. An injury that cannot be foreseen or reasonably anticipated as the probable result of negligence is not actionable. Railway Co. v. Elliott, 55 Fed. 949, 5 C. C. A. 347, 20 L. R. A. 582; McCain v. Chicago, B. & Q. R. Co., 76 Fed. 125, 22 C. C. A. 99; Cole v. German Savings & Loan Society, 124 Fed. 113, 59 C. C. A. 593, 63 L. R. A. 416; Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Hoag v. Railway Co., 85 Pa. 293, 27 Am. Rep. 653; Ness v. Great Northern Ry. Co., 142 N. W. 165 (Supreme Court, North Dakota, October term, 1912); 5 Thompson on Negligence, § 5333.

[3] We are satisfied that the injury to Johnson was one of the ordinary risks and hazards of his employment, for which the railway company is in no wise liable, and that a verdict ought to have been directed in its favor.

Judgment reversed, and a new trial ordered.