## CHICAGO & N. W. RY. CO. v. PAYNE.

(Circuit Court of Appeals, Eighth Circuit. September 17, 1925.)

No. 6933.

1. **Master and servant ⟨⟩265(3)—Burden on employee to show negligence was proximate cause of injury.**

In action for personal injuries sustained in stepping on a piece of coal, burden was on plaintiff to show that railroad company was negligent in a duty owed to him, that its negligence was the proximate cause of his injury, and that a like injury due to the alleged negligence could have been anticipated by a .reasonably prudent person.

2. **Master and servant ⟨⟩101, 102(2)—Master not insurer of servant's safety.**

It is duty of master to provide servant with safe place to work, and to exercise reasonable care in making the place of work safe, but he is not an insurer of servant's safety.

3. **Master and servant ⟨⟩101, 102(8)—Usual precautions, which reasonably prudent men are accustomed to take, constitute reasonable care.**

If, under circumstances of particular case, usual precautions against accident were taken by master, which reasonably prudent men under similar circumstances were accustomed to take, this would constitute strong proof of reasonable care on part of master, and, in absence of circumstances tending to show negligence, there can be no liability on part of master, and verdict against master in such a case is without support.

4. **Master and servant ⟨⟩112(3)—Evidence servant fell on pile of ashes and cinders held not sufficient to take railroad's negligence to jury.**

Evidence that engine watchman in nighttime sprained his ankle by stepping on lump of coal concealed in pile of ashes while going about his work *held* not to make railroad's negligence question for jury, in view of his testimony that he carried lantern and did not see ashes until he fell; other evidence showing that master took usual and seasonable precautions to keep tracks clear of obstructions.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by Dean D. Payne against the Chicago & Northwestern Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Robert D. Neely, of Omaha, Neb. (Wymer Dressler and Paul S. Topping, both of Omaha, Neb., on the brief), for plaintiff in error.

Hugh J. Boyle, of Norfolk, Neb. (M. F. Harrington, of Omaha, Neb., on the brief), for defendant in error.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. About midnight of April 3, 1920, Payne suffered an injury to his left ankle while he was in the employ of the railway company in its yards at Norfolk, Nebraska. He attributed the injury to the negligence of the railway company, alleging in his complaint that it "carelessly, negligently and wrongfully kept and maintained a pile of cinders, coal and ashes close to one of its railroad tracks in its yards at Norfolk, Nebraska, and in a place where plaintiff and other employees necessarily had to travel in working at or about locomotives and where the plaintiff necessarily had to travel to reach one of the locomotives which he was about to fire, putting coal therein and keeping the fire going which it was his duty to do."

He further alleged that he stepped into the pile of cinders, coal and ashes, and by reason of stepping on a lump of coal which was part of said pile he received the injury complained of. The answer was a general denial. Payne recovered judgment.

[1] It was Payne's duty as an employee of the railway company to keep the engines in the yard fired up during the night, going from one to the other for that purpose. There was no witness to the accident except Payne himself, and no one testified to having seen the pile of ashes and cinders, either before or after the occurrence. He went to the roundhouse after it occurred and others testified that his ankle was then very much swollen. He testified that the pile was between tracks, about two feet from the end of the ties, that it was about two feet wide, four inches or so deep and as long as himself, that when he stepped into it his foot turned on a lump of coal which the ashes and cinders covered and he fell on the pile, that he did not know that the piece of coal or the ashes and cinders were there before he stepped on it, that the pile was wet and made his shoes and overalls wet. He had a lighted

lantern in his right hand, and after he fell he saw the pile of ashes and the lump of coal. The lump of coal was about six inches long, four inches wide, three or four inches thick, and sharp on the top edge. At the time the accident occurred he was walking along the track, going from one engine to another in the discharge of his duties. After he was injured he saw other lumps of coal about the pile of ashes and cinders. There was a roundhouse in the yards, a water tank, a coal chute for the supply of engines and a cinder pit, over which the engines were placed to clean out the ashes and cinders. There were a great many tracks in the yards. No one, not even Payne, could account for the pile of ashes and cinders being between tracks rather than between rails, and no one ever saw the pile, so far as the record shows, except Payne. If the ashes and cinders were between the tracks, they were at an unusual place and must have been shoveled from between the rails after being dropped from an engine, or brought from elsewhere; and there is no evidence indicating by whom this was done, nor when it was done, nor how long they had been there before the accident, nor how long they remained. On that subject there is only conjecture. The burden was on Payne to show that the railway company was negligent in a duty it owed to him, that its negligence was the proximate cause of his injury, and that a like injury due to the alleged negligence could have been anticipated by a reasonably prudent person. Cole v. Savings & Loan Society, 124 F. 113, 59 C. C. A. 593, 63 L. R. A. 416; Western Union Tel. Co. v. Schriver, 141 F. 538, 550, 72 C. C. A. 596, 4 L. R. A. (N. S.) 678; United States F. & G. Co. v. Des Moines Nat. Bank, 145 F. 273, 280, 74 C. C. A. 553; Winters v. B. & O. R. Co., 177 F. 44, 50, 100 C. C. A. 462; Great Northern R. Co. v. Johnson, 207 F. 521, 125 C. C. A. 183.

There was substantial dispute as to how the injury occurred and the extent of it. Three days after the accident X-ray pictures were taken of Payne's left ankle in the office of the railway company's surgeon, and he testified that Payne at that time stated: "He was stepping from the engine and there was some coal scattered along the side, scattered around, and that he stepped on a chunk of coal and it turned his ankle;" that he said nothing about a pile of ashes.

The railway company produced at the trial a written statement which it claimed had been made by Payne to its claim agent, wherein he stated the manner in which he had received the injury. Payne denied that the signature to the statement was his. There was evidence that it was his. In answering a question in that statement as to how the accident occurred Payne's purported answer was this: "Got off engine while watching it, and going to another stepped on a piece of coal that laid on the ground and sprained left ankle."

On April 4th two X-ray pictures of Payne's ankle were taken at the office of his physician, and two X-ray pictures of an ankle were produced at the trial by Payne's physician. Those two pictures showed two broken bones in the ankle. The two X-ray pictures taken of Payne's left ankle at the office of the railway company's surgeon were produced at the trial. Those two pictures showed that no bones were broken. The railway company produced several competent witnesses on the subject, who testified that the X-ray pictures brought into court by Payne's physician were pictures of a right and not a left ankle, and there were additional evidences that the pictures taken at the office of Payne's physician and the office of the company's surgeon were of entirely different ankles.

There was uncontradicted testimony by two witnesses who had had many years' experience and observation in the operation of railroad yards and their equipment that there were at all times lumps of coal in the yards that fell from coal tenders as the engines were moved about, and that there was no practical way of avoiding this, that it was a general and universal condition to find chunks of coal scattered through railroad yards, that laborers were employed to go through the defendant's yards during the daytime and pick up this coal, that there was some to be picked up each day, but these laborers did not work at night. Payne was fully familiar with that fact. Bearing in mind the foregoing facts the court instructed the jury, properly we think, that:

"If it was merely that he said he stumbled on a lump of coal; that that was what happened to him, then he would not be entitled to recover any damages at all, no matter what the extent of the injury. The mere presence of a lump of coal in the switching yards would not be any proof of negligence on the part of the railroad. * * * You have the testimony of the doctor, in which the doctor says that the man told him that he merely stepped on a lump of coal and did not say anything about the cinders or ashes, and the doctor appears to have written that down on the report. * * * If you say to yourselves, we believe the man merely

stepped on a lump of coal, and that caused his injury, if you so believe, then do not hesitate on account of any other feeling—— your verdict should be against him. * * * Under the facts as they are developed by all the evidence his whole case depends on that matter of the ashes being there. * * * In his testimony here he positively swears before you that there was such pile of cinders and ashes, and that together with the coal in it, there was something unexpected to him, and that he did not observe it as he walked along, and that it caused him to slip and fall and hurt himself."

The court in further commenting on the testimony expressed the view that the proof did not show there were any broken bones in Payne's ankle.

[2-4] The Nebraska statute in a case like this has abolished the defense of assumed risks; and the inquiry here is whether the facts show negligence as charged on the part of the railway company,—whether there is any evidence to support that charge. At the close of all of the testimony counsel for the railway company moved for a directed verdict on that ground, and assigns error on its refusal. The inquiry and its answer depend on the circumstances of each case. Randall v. R. Co., 109 U. S. 478, 3 S. Ct. 322, 27 L. Ed. 1003; Denver Park & Amusement Co. v. Pflug (C. C. A.) 2 F.(2d) 961. Counsel for Payne rest his case on the principle that the master must furnish the servant a safe place in which to work. But under that rule the master is not an insurer of the servant's safety; he is required to exercise reasonable care in making the place safe. We said in United States Smelting Co. v. Parry, 166 F. 407, 92 C. C. A. 159: "It is the duty of a master to exercise reasonable care to provide a reasonably safe working place for his servant." See also Owl Creek Coal Co. v. Goleb, 210 F. 209, 127 C. C. A. 27. If under the circumstances of the case usual precautions against accident which prudent men are accustomed to take under similar circumstances were taken, this constitutes strong proof of reasonable care on the part of the master; and in the absence of countervailing circumstances tending to show negligence there can be no liability, and a verdict against the master in that situation is without support. Chicago Great Western R. Co. v. Egan, 159 F. 40, 86 C. C. A. 230; C., M. & St. P. R. Co. v. Moore, 166 F. 663, 92 C. C. A. 357, 23 L. R. A. (N. S.) 962.

It was shown by uncontradicted proof that the railway company pursued the usual and customary practice of railway companies in their yards. Coal is loaded into the engine's tender at the coal chute in the yards. Before they are taken out they are moved about the yards, from the coal chute to the water tank, to the cinder pit, and sometimes to the roundhouse, and in these movements lumps of coal unavoidably fall from the freshly loaded tender. Payne was furnished with a lantern so he could go safely through the yards about his work. He testified that he saw other lumps of coal, and we think it must also be true that he could have easily seen the pile of ashes and cinders into which he stepped if he had utilized the provision of safety made for that purpose. He says he did not see it. The court eliminated from consideration of the jury the dropping of lumps of coal along the track as negligence on the part of the railway company, and instructed the jury that the presence of coal in the yards was no proof of negligence and that Payne could not recover if he merely stepped on a lump of coal and sprained his ankle. The case was submitted on the fact, testified to by Payne, that the lump of coal was concealed in the pile of ashes and cinders. We fail to see the relevancy of that fact, how it could constitute negligence, or be a contributing cause. That part of the charge was also excepted to by counsel. Payne did not testify that he stepped into the pile of ashes and cinders because he thought that was a safe place on which to walk. He was not thus led to his injury by hidden danger, as the court seems to have submitted to the jury; because he testified positively, both on direct and cross examination, that he did not see the ashes and cinders, did not know they were there until after he had stepped into them and had fallen upon them. In no sense was the issue submitted the proximate cause or any cause of the injury; nor did the facts tend to show a failure of the railway company to exercise reasonable care for Payne's safety; nor could it be foreseen by a reasonably cautious person on the facts adduced that an accident and injury like the one under consideration would or might occur in the way this one occurred. The case is damnum absque injuria, and the motion for a directed verdict in favor of the railway company should have been granted.

Reversed and remanded.