## SCHILLING v. DELAWARE & H. R. CORPORATION.

### No. 377.

Circuit Court of Appeals, Second Circuit.

Aug. 1, 1940.

Louis N. Jaffe, of Brooklyn, N. Y., for plaintiff-appellee.

Thomas L. Ennis, of New York City, (Joseph Rosch, Kenneth E. Walser, and James H. Halpin, all of New York City, of counsel), for defendant-appellant.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff recovered a judgment in the District Court for the Southern District of New York for the damages, assessed by a jury, which he sustained when his left leg was cut off between the ankle and the knee in the defendant's freight yard at Binghamton, N. Y., on March 29, 1938, and the defendant appealed.

The evidence was sufficient to enable the jury to find that when the accident happened the plaintiff was in the employ of the defendant engaged in interstate work as a brakeman classifying freight cars. The yard where he was working had a lead track running north and south from which ten parallel tracks ran off in a southeasterly direction on a down grade sufficient to let cars which had been released move down them by the force of gravity. In this way cars having the same destination were placed upon the same track. As one or more cars were released to move into any of these side tracks, it was the duty of the plaintiff to mount one of them at the hand brake and apply that brake at the right time to stop them when they had reached the desired position.

The accident happened about nine twenty-five on a rainy evening under the following circumstances. The plaintiff had returned to the lead track from a trip down a side track and was walking north on the west side of the lead track toward six cars standing on it which were to be classified. As he came close to these cars he saw the conductor who was in charge of the crew in which he was working standing near the north end of the nearest car with a switch tender named Spencer. This car was some thirty-five feet beyond the switch of side track No. 2 and the plaintiff then knew the car was to be let down side track No. 3 and that he was to ride it. When he was within seven or eight feet of the south end of the car, he could tell that the brake wheel was at the northeasterly corner of it and, as it was safer to mount the car at that corner, he started across the track to go up the east side of the car for that purpose.

The ties in that track had been made of two pieces of discarded rails welded together at the bottom flanges. This left a space between the two pieces of rail at the top some three or four inches wide and as

deep as the height of the rails, but such spaces were filled with cinders and when the ties were in proper condition were kept so filled. At times, however, the filling would be washed out and this sometimes happened when an engine standing on the track blew off steam. The defendant inspected the track daily and the inspection crew's duty included filling such holes in the ties. There had been such an inspection of the track on the day of the accident.

Eight or ten seconds after the plaintiff started across the track as previously stated, the conductor having signalled to the engineer to take up the slack and pulled the coupling pin to cut off the car, the car began to move slowly and, as it happened, directly toward the plaintiff who had stepped into an unfilled space in a tie and caught his left foot so firmly that he could not release it. The car wheel struck his leg and knocked his foot loose but he was unable to pull it away before the wheel ran over his leg and cut it off.

The plaintiff contended that the defendant was negligent in (1) using ties of the kind described; (2) allowing an unfilled space to exist between the two pieces of the tie in which he caught his foot; (3) failing to warn him before moving the car; (4) failing to allow enough time to cross the track; and (5) failing to comply with a custom in the yard which prevented the release of a car until the brakeman was known to be in a position to mount it at the brake corner.

At the defendant's request, the court ruled that use of the kind of ties was not per se negligent, but we cannot surely tell from the record that the jury ever was so informed. At any rate, none of the other so-called negligent acts or omissions was eliminated from the case though the defendant moved for a directed verdict on the ground that no negligence whatever had been proved.

█ It was, of course, the duty of the defendant to provide a safe place for the plaintiff to work and such a space in the tie as that in which he caught his foot made it unsafe. Yet proof of that is not alone enough to charge the defendant with liability. It was shown that in the ordinary course of the work the cinder filling in the ties did get washed out and the duty of the defendant of necessity was one of adequate inspection and timely repair. There

is nothing to indicate that the daily inspection provided was not equal to what a prudent man in like circumstances would have done except possibly the testimony by deposition of one trainman in the crew in which the plaintiff worked who came on duty at 4 o'clock that afternoon and testified when asked if he looked at the hole more than once: "I noticed it all day. It was there before". He did not report it or state any more definitely the length of time it had been there. As his day began at 4 o'clock that afternoon there was little on which the jury could have found that the hole had been there long enough to charge the defendant with constructive notice and the duty to repair. Proof of actual notice was wholly lacking. One or the other must appear to make out actionable negligence for failure to repair. Hatton v. New York, New Haven & Hartford R. R. Co., 1 Cir., 261 F. 667; Great Northern Ry. Co. v. Johnson, 8 Cir., 207 F. 521. Knowledge of the trainman who did not do track maintenance work was not the equivalent of notice to the defendant. Scano v. Turner & Blanchard, Inc., 209 App.Div. 41, 204 N.Y.S. 372. Though the evidence was meagre we are not prepared to say, however, that there was not enough to submit this ground of negligence to the jury under proper instructions.

█ The claimed failure of the defendant to warn the plaintiff that the car was about to be moved was an entirely false issue since such a warning would not have added to his knowledge or prevented his attempt to cross the track. He knew perfectly well that it was to be moved and knew that he would be given no warning as he himself testified. Failure to withdraw this ground of liability from the jury was error emphasized by granting only partially defendant's request to charge that, "The conductor was under no duty to warn the plaintiff that the car was about to be moved unless he knew the plaintiff was in a position of danger and was oblivious thereof". The last four words were omitted. The evidence was undisputed that the plaintiff's work was dangerous in its nature and the jury was permitted to treat failure to warn in this instance as actionable negligence though the evidence was clearly insufficient to make it so.

There was some confusion as to the custom which the plaintiff claimed, but there was enough proof to justify the jury in

finding a definite and regular custom not to cut off a car until the man making the cut off had knowledge that the brakeman to ride it was in position near the brake so as to be able to mount the car. This car was cut off in disregard of such a custom provided the jury found one. Furthermore, there was no evidence that the car started before the plaintiff would have had time to cross the track had he not caught his foot.

Under these circumstances it was, perhaps, more than usually necessary to have the grounds of negligence relied on clearly explained to the jury in the light of the applicable law so that legal responsibility could be determined on such facts as were found. Unfortunately however, we are unable to find anything in the charge which can be said to have done that. Nothing whatever was said as to the law relating to the violation of a custom in respect to the moving of cars in a railroad yard nor were the issues as to the claimed negligence of the defendant stated with the applicable law in such a way that we can have reasonable assurance that the jury comprehended the issues. The defendant's attorney amply but fruitlessly called this failure to the court's attention. Apparently the judge was under the erroneous impression that the matter had been fully covered for we have no doubt that he would otherwise have clearly defined the issues with his usual meticulous care and with due regard for the legal significance of such facts as the jury might have found on the evidence.

As the case must be treated now as submitted upon the unproved issues of failure to warn the plaintiff of the impending movement of the car, and lack of time to cross the track as well as upon theories of recovery as to which submission was justified there must be a reversal since the verdict was general and no one can tell whether or not the jury found for the plaintiff upon an issue unsupported by the evidence. Christian v. Boston & Maine R. R., 2 Cir., 109 F.2d 103.

Since the defendant's railroad does not run into the territory constituting the Southern District of New York, though it maintains executive offices in that District, it insists that the court was without jurisdiction and asks a reconsideration of the same question decided adversely to it in Wood v. Delaware & H. R. R. Corp., 2 Cir., 63 F.2d 235. We decline to do that, however, and adhere to our former decision.

Judgment reversed and cause remanded for a new trial.