**ULM v. MOORE–McCORMACK LINES, Inc.**
No. 122.

Circuit Court of Appeals, Second Circuit.
Jan. 27, 1941.

For prior opinion, see 115 F.2d 492.

Joseph S. Robinson, of New York City (N. Sinclair Robinson and Arthur S. Gales, both of New York City, on the brief), for petitioner.

John C. Crawley, of New York City (Barry, Wainwright, Thacher & Symmers, of New York City, on the brief), in opposition.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff reads our opinion herein, 2 Cir., 115 F.2d 492, as saying, in effect, that "upon any trial, an attorney for one of the parties may pick up any piece of paper, offer it in evidence upon a showing that it was subpoenaed, and the offer must be accepted," if its contents are relevant. We do not think that a fair reading; at any rate, we hasten to disavow any intent to set aside the statutory provisions, 28 U.S. C.A. § 695, for the admissibility of relevant business records when made in the regular course of business and when it is the regular course of business to make such records at the time of the occurrence in question or within a reasonable time thereafter. Plaintiff's concession that the records were procured by subpoena to their custodians was only one of several indicia of authenticity upon which we relied. And we thought a new trial necessary not only because of the exclusion of the hospital records, but also because of undue restriction of cross-examination—each involving the same vital issue of the nature or existence of plaintiff's personal injuries, and hence not only their extent, but also whether he had been injured at all.

Since our discussion was directed to incidents of trial which are unlikely to be reproduced, further exploration of the subject will hardly aid the parties herein. Perhaps, however, we should say something more, lest perchance our decision be misunderstood as a precedent. The two Stapleton records are the vitally important ones, for they contain the observations of the admitting doctors that plaintiff showed no external injury after the alleged accident. The necessary requisites of admissibility were amply proven by the two hospital internes offered as witnesses by the plaintiff himself.

From the first witness, Dr. Rawlings, plaintiff brought out that when a patient comes into the United States Marine Hospital at Stapleton he is asked the history of his illness and is given a physical examination, and that the witness had taken plaintiff's history and given him his examination on his second admission on February 28, 1940, and had thereafter attended him. Then the witness was extensively examined and cross-examined in the light of his own entries in the hospital records which were used to refresh his recollection. One question asked by defendant was, "As I understand, what you recorded there on this occasion was very largely what the plaintiff told you; is that correct?" to which the witness answered, "No, sir. We use both the history and the physical examination in order to make conclusions. * * *" Plaintiff also asked him whether or not he could tell from the records of the original admission who made the admission notes; he said he could, and that Dr. Beardsley made them. Then to plaintiff's question, "And the record that I hand you, is that the record of his admission to the Marine Hospital?" he answered, "It is." To the question, "On the 25th day of December, 1939; is that right?" he replied, "That's right." The court then reminded the plaintiff of its original ruling, and stated that he could not have the record admitted any more than could the defendant. [The court's original ruling, made as to the Chelsea record, was that there was a better way of proving the records, by subpoenaing the doctor, and that only if he were dead or otherwise beyond subpoena could other methods of proof be considered.] Plaintiff disclaimed any intent to offer the record and then brought out from the witness that Dr. Beardsley himself was now a patient in the hospital, unable to be moved. Later on cross-examination the court prevented the witness from reading to the jury anything from the records which he had not written himself.

From the second witness, Dr. von Berthelsdorf, plaintiff brought out extensive evidence of the witness' treatment of him during his first stay at the hospital, using constantly the witness' own entries in the first record. On cross-examination, the court refused to allow use of an entry by another doctor, even before counsel for plaintiff had looked at it, because it would be "a waste of time" and "unnecessary." The witness identified the two pages of admission notes on plaintiff's second admission as having been made by Dr. Edwards, the surgeon on the third floor. Then defendant offered this second record, to the extent of the pages "that were identified by the doctor who was last on the stand"; plaintiff objected that it was "incompetent, irrelevant and immaterial and not the best evidence," and the court said, "Sustained."

Thereupon the Chelsea record was again offered and excluded; then the first Stapleton record was offered, and upon objection that "no proper foundation" had been laid, it was excluded without discussion. Thereafter later offers immediately directed to the Galveston records were made to refer to all the records and were used by the court to reiterate its view that the course chosen was not the correct method of proving such records and that defendant would have to have the physician himself testify in each instance.

The records themselves are on government-printed forms of the United States Public Health Service, which contain full directions to the attending physicians as to the entries to be made. Thus, the form for the first admission record requires a history of the disease in the patient's own words, with "subjective symptoms"; then follows the page particularly in issue here, of "Clinical Record—Objective Symptoms," with four lines in small type of directions for physical examination, with the matters to be noted, such as general appearance, weight, eyes, ears, nose, and so on; also "record abnormal findings only," and "diagnosis by name and number will be recorded on this sheet." Then follow the date and hour, the blank page for the entries, a line for the ward surgeon's signature, and another line for the patient's name. Here this sheet, dated "12-26-39" at "2:30 P. M.," is written and signed by Dr. Beardsley, and contains a description of the patient in question, including statements that he was "a well developed & well nourished adult, White male," who was lying quietly in bed, but was unable to walk because of a pain in his back, and "he does not appear acutely ill." The situation as to the second Admission Note was substantially similar, except that Dr. Edwards had made his entry of "2/28/40" upon a form for "Ward Surgeon's Progress and Treatment Record" calling for "treatment" and "daily progress of the case."

 It thus appears that not only were the entries by the doctors regularly made at the time of the occurrences, but that it was the regular course for the doctors to make them. The forms show this by their explicit directions, and the witnesses stated the matters they were accustomed to record in usual course. Indeed, it would be a curious hospital where the doctors made no record of their examination and observation of patients on admission. Plaintiff does not now claim that the records were not so made. He is only trying to sustain the court's ruling of a different nature on the ground that there was not formal testimony that it was usual for the hospital to keep records of this sort. Of course, a direct question to either of the internes to this effect would have brought forth the formal affirmative at once; that it was not thus formally asked is obviously due to the fact that nobody thought to go through "the idle form of articulating the obvious." Kansas City S. R. Co. v. Jones, 241 U.S. 181, 183, 36 S.Ct. 513, 514, 60 L.Ed. 943. It would be support of a trap for the unsuspecting, were we to affirm a harsh exclusionary ruling, contrary to modern trends in the law of evidence, particularly as emphasized by Federal Rule 43(a), 28 U.S.C.A. following section 723c, merely because the lily was not thus gilded. We recognize the need for sustaining a ruling which reaches a correct result and does not prejudice substantial rights, even though only a general objection or perhaps even a specific erroneous objection has been made. Mine & Smelter Supply Co. v. Parke & Lacy Co., 8 Cir., 107 F. 881. But that does not apply where a technical basis, capable at worst of being easily obviated at trial and actually of no real substance, is brought forward as an afterthought to support a controlling ruling made on unsustainable grounds. Kansas City S. R. Co. v. Jones, supra; Federal Rule 61; McCandless v. United States, 298 U.S. 342, 347, 56 S.Ct. 764, 80 L.Ed. 1205.

Plaintiff also still attacks the admissibility of the records on the merits. But that position, as we have stated, seems to us contrary to the statute and the trend of modern decisions. A commentator points out that there are decisions in favor of admissibility in fourteen states, and also in six more subject only to questions of authentication, while decisions in only four states have denied admissibility. 38 Mich. L.Rev. 219. Compare also 24 Minn.L.Rev. 958; 6 U. of Pittsburgh L.Rev. 9. A recent decision showing the modern trend under the statute is Borucki v. MacKenzie Bros. Co., 125 Conn. 92, 3 A.2d 224, noted with approval in 27 Calif.L.Rev. 466.

 Plaintiff also asks for severance of the case to uphold the recovery on the count for maintenance and cure and to allow retrial only on the issue of damages. But the errors concerned not only the extent of plaintiff's injury, but also whether he suffered any accident at all on ship-

board. As to costs, the judgment on this appeal is a final determination of this aspect of the case and should include appellate costs in usual course.

Petition denied.