**RASHAW v. CENTRAL VERMONT RY.,**
Inc., et al.
No. 56.

Circuit Court of Appeals, Second Circuit.

Feb. 3, 1943.

McFeeters & Kissane, of St Albans, Vt., and M. G. Leary, and M. G. Leary, Jr., both of Burlington, Vt., for plaintiff.

Horace H. Powers, of St. Albans, Vt., for defendant Central Vermont Ry., Inc.

Before L. HAND, SWAN and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff's intestate fell while attempting to walk across a railway bridge in the railway yard of the defendant at Bethel, Vt., in the performance of his duty as a brakeman in the employ of the defendant. He eventually died from the injuries then received and this suit was brought under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover in behalf of his widow and two minor children.

The evidence does not show all that must have happened when the deceased was hurt but does show substantially as follows:

On the afternoon of January 20, 1940, a southbound train of the defendant on which the deceased, Rashaw, worked as a brakeman had come into the railroad yard at Bethel and had begun to do some work there switching. Before it had finished this work and a few minutes before four-thirty, it became necessary to move the train in a southerly direction over the bridge being repaired and onto a temporary siding to clear the main line for a southbound fast freight. When that was done there were switches and derails on the northerly side of the bridge which had to be set in order to make the track safe for the fast freight which would soon be coming through and the conductor told Rashaw not to forget his derails north of the bridge. Rashaw started back over the bridge and was last seen by the conductor when from one-quarter to one-third of the way across. Before he got across he fell to the highway to receive the injuries from which he later died. A man on or near the highway chanced to see him fall but could tell very little about that as he apparently noticed him only after he was "dropping through the air" and he could not tell whether he fell from the abutment or from the track, i.e., the bridge. This witness also testified that he was at the place of the accident within a very short time and that Rashaw was then on his hands and knees from eight to twelve feet westerly of the westerly end of the ties and perhaps six feet from the northerly abutment. So far as appears, no one else saw Rashaw after he started to cross the bridge until he had fallen. The paucity of the evidence in that respect coupled with the proof of where he was soon after he fell led to the contention by the defendants that he must have been on the abutment away from the bridge when he fell but as the jury must have found, before it could return a plaintiff's verdict under the charge of the court, that he fell from the bridge we shall treat his fall

for the purposes of this appeal as one from the bridge.

There was no substantial dispute as to the condition of the bridge. The ties on which the rails rested were very slippery because of ice which was thick enough to make them rounded on the top. Dense steam did envelop the bridge a few minutes after the accident but there was no direct evidence of such steam being there at other times although there was a determined attempt to impeach the conductor on the basis of evidence of previous statements to that effect which he, however, denied having made. There was undisputed evidence that the bridge had been in about the same icy condition two days before the accident when the conductor walked over it with the assistant superintendent of the northern division of the railroad.

The evidence fails to show whether the railway bridge in use while the repairs were being made was then in condition that would be standard construction for the railroad. There was but a general description of it and a picture introduced in evidence as plaintiff's exhibit No. 2 shows it in part at least on temporary supports resting on the surface of the highway which it spanned between the two permanent abutments of the bridge. The top surface of the bridge cannot be seen in the picture but the evidence shows that when so in place and in use it carried but a single track. It also appeared that the old bridge had been shorter.

■ The case as thus made presented a jury question at to the negligence of at least the defendant railroad in allowing the bridge to remain in its icy condition when the plaintiff's intestate was required to cross it to do his work. We will, of course, take notice of the prevailing weather conditions in Vermont in January respecting ice on exposed bridges. In varying degrees ice must necessarily be present on such bridges of the defendant railroad at that time of year and its presence alone is not proof of a failure to exercise the care owed a brakeman who may have to walk across it in doing his work on one of its trains. But this was not an instance of the occurrence of an accident to a railroad employee on a right of way of standard construction built in accordance with the judgment and practice of railroad engineers. Consequently cases like Delaware, etc., R. R. v. Koske, 279 U.S. 7, 11, 49 S.Ct. 202, 73 L.Ed. 578; and Hylton v. Southern Ry. Co., 6 Cir., 87 F.2d 393 holding that juries may not substitute their judgment as to engineering problems and their solution for that of railroad engineers are not in point. There was no proof that this bridge was in the condition it would have been when completed and in the absence of such proof it was for the jury to determine from all the evidence as to its actual condition whether the railroad had used reasonable care under the circumstances to make it safe for the use of the decedent in doing his work. Schilling v. Delaware & H. R. Corporation, 2 Cir., 114 F.2d 69; Cincinnati, etc., R. Co. v. Hall, 6 Cir., 243 F. 76. True it is that icy conditions on such bridges change with changing weather conditions and when the roadbed has been put into permanent shape in conformity to recognized standards it may well be the railroad is not liable to its employees for injuries due to the temporary changes in conditions ordinarily to be expected from the action of the elements. Missouri Pac. R. R. v. Aeby, 275 U.S. 426, 48 S.Ct. 177, 72 L.Ed. 351; American Bridge Company v. Bainum, 3 Cir., 146 F. 367. But where temporary conditions due to the making of repairs to the roadbed exist which a railroad employee, like the brakeman in this instance, must cope with in doing his work, and reasonable men might differ as to whether or not the railroad had exercised the care the circumstances required to make the place reasonably safe for him to do his work, a question for the jury is presented. For that reason we think the appellant's motion for a directed verdict was properly denied.

■ In submitting the case to the jury, the judge took occasion to state the negligence charged by the plaintiff. In so doing he told the jury, in an otherwise admirable charge, that the plaintiff alleged, among other things that the railroad "negligently permitted the other defendant, the Littleton Construction Co., to discharge large volumes of steam and smoke onto the bridge from its machinery, thereby causing the bridge to become slippery and dangerous; that it negligently permitted the said Littleton Construction Company to discharge large and dense quantities of steam and smoke upon the bridge thereby greatly impairing the vision of the plaintiff's intestate and creating a hazard and danger to him in the performance of his duties; that it negligently failed and neg-

lected to warn the plaintiff's intestate that steam and smoke from said machinery would gather upon and about said bridge so as to increase the hazard and danger to the plaintiff's intestate in the performance of his duties." This was correct so far as allegations go but those allegations were not supported by proof sufficient to make any issue for the jury in respect to them. The plaintiff attempted unsuccessfully to prove that there was steam at the bridge before the accident when she called the conductor of the train as a witness. He then denied that he saw any steam there before the accident or until twelve minutes after he had last seen Rashaw. A persistent attempt was made to get him to admit telling the attorneys for the plaintiff that he had seen the bridge enveloped in steam while Rashaw was crossing but he steadfastly denied so saying. He testified that when he last saw him Rashaw was from a quarter to a third of the way across the bridge and that there was no steam. The witness testified further that he himself then went into the caboose to do some work and did not look at the bridge again until twelve minutes later when he heard an engine whistle. He then looked toward the bridge and it was then enveloped in steam. Not only was this witness pressed hard to admit the making of the statement that he had seen steam around the bridge before the accident but one of the attorneys for the plaintiff withdrew from the case and testified that the conductor had said out of court that there was steam around the bridge when Rashaw went across. After this feature had been so much emphasized during the trial it was especially important not to submit issues to the jury which were based on claims this evidence did not as a matter of law prove at all. The conductor was the plaintiff's witness and though the court did permit the plaintiff to try to discredit him the evidence as to his previous statements of the presence of steam on the bridge at any time before Rashaw fell did not tend to prove that steam was then in fact there. Southern Ry. Co. v. Gray, 241 U.S. 333, 36 S.Ct. 558, 60 L.Ed. 1030; United States v. Graham, 2 Cir., 102 F.2d 436. The impeaching testimony of the attorney left the case still barren of evidence that anyone had seen steam about the bridge before the accident nor was there anything to indicate whether the steam the conductor did see there had come from the engine whose whistle he heard or from some other source. The re-

sult is that the case was submitted to the jury upon allegations of negligence some of which were not supported by any substantial evidence whatever. This was reversible error since the verdict was general and may, for aught that now can be told, have been put upon such false issues. Christian v. Boston & Maine R. R., 2 Cir., 109 F.2d 103; Schilling v. D. & H. R. R. Corp., supra.

Judgment reversed and cause remanded.