**KORTE v. NEW YORK, N. H. & H. R. CO.**

No. 258, Docket 21995.

United States Court of Appeals
Second Circuit.

Argued June 5, 1951.

Decided July 24, 1951.

Writ of Certiorari Denied Nov. 5, 1951.

See 72 S.Ct. 108.

Plaintiff was injured on December 20, 1946, when he wrenched his back trying to open one of the familiar flat steel trap doors or "traps" which cover the steps on railroad passenger cars and which, when opened, make it possible for passengers to ascend or descend the steps to the vestibule of the car. He was on train No. 369, going from New Haven to Grand Central Station, New York, and was injured when he tried to open the trap, so that passengers could get off at the 125th Street Station in New York.

It appears that traps operating normally are opened by (1) stepping on a release mechanism, which frees the trap so that a spring forces it up from three to sixteen inches, and then (2) pulling it up the rest of the way by hand. In this case according to plaintiff's testimony either the release mechanism, which was "rusty," did not work or the spring was broken; hence the trap did not rise. From the evidence presented, the jury might fairly have found that plaintiff tried to open the trap by stepping on the release, that it did not open, that he then leaned over and, still standing on the release, tried to wrench it upward manually, thereby sustaining the injuries of which he complains. This disposes of defendant's claim that "Plaintiff failed to prove that any defect existed in the trap door or the mechanism by which it was operated that could have prevented the door from rising." For the jury believed the plaintiff, and no other proof was necessary.

Defendant also asserts that the accident was not reasonably foreseeable. Thus it says, "Plaintiff failed to prove that defendant knew or should have known that the trap door or its operating mechanism was defective." These arguments are likewise unavailing after the jury's verdict. The jury was entitled to believe the plaintiff's case as he presented it; in fact, however, it received some measure of support from defendant's evidence. Thus one Hogan, Car Maintenance Assistant to one of defendant's vice-presidents, said that with respect to trains on this run it was the practice that "the interior of the cars is inspected by two inspectors at Grand Cen-

Robert M. Peet, of New York City (Edward R. Brumley, of New York City, on the brief), for defendant-appellant.

Randolph J. Seifert, of New York City (Coughlan, Russell & Seifert and John T. Norton, all of New York City, and William A. Blank, of Brooklyn, N. Y., on the brief), for plaintiff-appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Defendant New Haven Railroad appeals from a district court judgment awarding plaintiff George P. Korte $25,045.52 after a jury trial in an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for personal injuries sustained in the course of his employment as a ticket collector. The errors relied on are (1) lack of sufficient evidence of negligence to justify submission of the case to the jury, and (2) admission in evidence of certain reports in the form of letters of doctors not called to testify in person. We think the judgment must be affirmed.

tral Station. They go over the interior of the car like seats, door locks, doors and so forth, and trap doors, trap door locks: They inspect those to see whether or not they are in good condition." This is normally done, he said further, as soon as possible after the passengers leave the train: "if the men are available at the time they make the inspection right away." Here it was shown only that trap door repairs were made on plaintiff's train after he was injured and had filled out the customary accident report form giving as the reason for the accident: "Trying to open trap which was stuck." So we may not contradict what is implicit in the jury's verdict: that an inspection was not made, or, if made, was faulty, or, if not faulty, was not followed by timely action. It is certainly foreseeable that a man may injure his back or a muscle trying to raise a trap door which, by Mr. Hogan's testimony, weighs "80 pounds without fixtures; with fixtures it runs about 95." Moreover, Mr. Hogan testified that he had had trouble with the trap doors on the New Haven's cars, and in the past had "shopped" cars to have defective traps repaired. The testimony was thus adequate to support foreseeability.

 It is apparent from the nature of the accident and the amount of damages awarded that the jury took a generous view of the plaintiff's case and evidence. But the damages, within limits not here exceeded, are not reviewable; and we think the jury was entitled to find the railroad negligent. To recover under the Act plaintiff must of course show negligence, Moore v. Chesapeake & Ohio Ry. Co., 340 U.S. 573, 575, 71 S.Ct. 428; Tennant v. Peoria & P. U. R. Co., 321 U.S. 29, 32, 64 S.Ct. 409, 88 L.Ed. '520, which must be the proximate cause of the accident. Reynolds v. Atlantic Coast Line R. Co., 336 U.S. 207, 69 S.Ct. 507, 93 L.Ed. 618. Where the danger is foreseeable, however, the railroad's liability is anything but restricted. Cf. Lillie v. Thompson, 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73. And the jury may

credit or discredit all or part of whatever testimony it hears in arriving at its verdict. Moore v. Chesapeake & Ohio Ry. Co., supra, 340 U.S. at page 576, 71 S.Ct. 428. Thus here it may have given more weight to Mr. Hogan's testimony, that he had had trouble with trap doors on the New Haven in the past, than would a court were it the trier of fact. But we have been cautioned that this is not our province. Thus see Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916, which is again quoted in Myers v. Reading Co., 331 U.S. 477, 485, 486, 67 S.Ct. 1334, 1339, 91 L.Ed. 1615: "Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." See also Wilkerson v. McCarthy, 336 U.S. 53, 61–64, 69 S.Ct. 413, 93 L.Ed. 497; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 67, 68, 63 S.Ct. 444, 87 L.Ed. 610. It is in the light of such admonitions and of the law as thus announced that we have felt it our duty to uphold jury verdicts under comparable conditions. Morris v. Pennsylvania R. Co., 2 Cir., 187 F.2d 837; Mostyn v. Delaware L. & W. R. Co., 2 Cir., 160 F.2d 15, certiorari denied 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355.

The verdict of the jury must therefore stand unless there was error in the reception of evidence. The question here presented as to the admission of the doctors' reports is an interesting and important one in the application of the Federal Business Records Act, 28 U.S.C.A. § 1732, also the law in Connecticut, Conn.Gen.Stat.1949, § 7903, and New York, N. Y. Civil Practice Act § 374–a.[1] The background of the offer came in the plaintiff's testimony as

1. Defendant's naming of the statute as the "Federal Shop Book Act" obscures its origin and the broad purpose it was intended to achieve. See Morgan, The Law of Evidence, 1941–1945, 59 Harv. L.Rev. 481, 561, 562, 566.

follows: The same day the accident occurred he went back to New Haven to the Railroad emergency hospital, where he was "taped up for the night" by the nurse, and told to return the next day to see Dr. Jenkins. Dr. Jenkins, who saw him continuously for two and a half or three months, sent him to a surgical factory to have a corset, or brace, made, and gave him heat treatments. But since he was getting worse, Dr. Jenkins had him X-rayed and then sent him to Dr. O'Connor, an orthopedic specialist. Dr. O'Connor examined him on January 20 and again on February 10, 1947, and sent him to Dr. Brody, a neurosurgeon, who examined him on February 17. Some two weeks later he was at New Haven Hospital under the care and examination of both doctors and of others, and thereafter had further care from them and others. It is the admission of two letters from Dr. O'Connor to "New York, New Haven and Hartford Railroad Co., Claim Department, New Haven, Connecticut," and of one letter of Dr. Brody to Dr. O'Connor marked "cc. Dr. Ralph Jenkins, New Haven Railroad," which presents the issue.

Photostatic copies of these letters were "furnished" plaintiff by defendant. Each is on the office letterhead of the respective doctor, giving his name, title, and New Haven street address. Each bears the rubber stamp showing receipt at the "Office of District Claim Agent" of defendant and the date. The first from Dr. O'Connor, dated January 21, 1947, and received the following day, states that he examined "the above named conductor at my office on January 20, 1947," goes on to give a "history" on patient's report, then an "examination" in detail, and concludes: "This man does not present a typical picture of any condition; however, it is my opinion that this is an atypical intervertebral disc lesion. I hesitate to suggest an operation in view of the fact that the findings are not typical but I believe this man is going to continue to have trouble. Both from the viewpoint of expense and disability the operation would be the best thing that could be done at the present time." The second letter, also from Dr. O'Connor,

written on February 11 and received by defendant on February 12, is as follows:

"I have re-examined Mr. Korte at my office on February 10th, at which time I find that he has all the complaints which he had at his previous examination and all the objective findings are essentially the same.

"It would appear that in view of the continuation of the findings that a positive diagnosis of an intervertebral disc lesion is justified and an operation for the removal of the disc with a fusion of the spine at that point is advised."

The third letter, from Dr. Brody to Dr. O'Connor, written on February 19, and received by defendant's Claim Department on February 25, begins, "Your patient was examined on February 17, 1947." After reciting certain of the history, together with the pains felt by the plaintiff and various tests performed by the doctor with their results, the letter concluded:

"This patient undoubtedly ruptured an intervertebral disc between the fifth lumbar and first sacral space on the left side on December 20, 1946. This is his first attack and the pain seems to be subsiding. In view of the steady improvement, I would recommend a conservative course. I would recommend that he try returning to work on March 1st and if he has a recurrence of pain, we should then proceed with a laminectomy for removal of the disc and a spinal fusion.

"Thank you very kindly for referring this patient to me."

When the first letter was offered, defendant objected that Dr. O'Connor had "no connection with the railroad," that it was "purely hearsay," and that it was "not a report made in the regular course of business." Thereupon the court received further evidence establishing that plaintiff had no connection with Dr. O'Connor and went to him only because of Dr. Jenkins' direction; this supplemented earlier like evidence as to both Drs. O'Connor and Brody. Then the court admitted the letter, saying that defendant had had plenty of opportunity to get the doctors there if they did not agree "with reports they sign." There-

after it instructed the jury that the part dealing with history "must be understood by the jury to refer to a statement by the plaintiff to the doctor as to what happened and is not to be accepted by the jury as testimony by the doctor that it happened, that the accident happened in the manner described." Then it admitted the other letters on the same ruling and specifically stated to defendant's counsel: "You understand that if you desire to take the testimony of these doctors, either by subpoena calling for their attendance here or taking their depositions in New Haven, that your application will be favorably acted upon by the Court and the trial postponed pending such examination." Defendant did not accept either of these suggestions, but was content to stand on its formal objection.

■ In its objection that the doctors were unconnected with the railroad and the intimation that the entry must be in the regular course of defendant's business, defendant is clearly in error; it is of course the business of the doctor, or otherwise necessary witness in person, which is involved. This is regularly held, as in Ulm v. Moore-McCormack Lines, 2 Cir., 115 F.2d 492, Id., 2 Cir., 117 F.2d 222, certiorari denied 313 U.S. 567, 61 S.Ct. 941, 85 L.Ed. 1525, or Freedman v. Mutual Life Ins. Co. of N. Y., 342 Pa. 404, 21 A.2d 81, 135 A.L.R. 1249, with annotation at 1258. A further objection that the letters were without the statute because "written after an accident at a time when litigation was a definite possibility" and written "not as a complete and objective record of an examination of a patient but in order to support the opinion given" cannot be sustained. It appears to be factually incorrect; the doctors were giving this plaintiff considerably more care and service, then and later, than this admits. Moreover, it is not a ground of objection under the circumstances here disclosed. Apparently this is an attempt to rely on the limitation upon

the statute developed in Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719, that a litigant cannot introduce evidence "built up to promote the self-interest of the entrant" or "contrived by the entrant for litigation." Pekelis v. Transcontinental & Western Air, Inc., 2 Cir., 187 F.2d 122, 130, certiorari denied 341 U.S. 951, 71 S.Ct. 1020. How far this limitation extends is not wholly clear; it would hardly seem applicable to independent doctors reporting on routine examinations conducted in the course of their professional activities. But be that as it may, the Pekelis case is clear authority for the admission of business entries from these doctors when offered by the plaintiff and not by the entrants or the company for whom they were—temporarily—acting. In that case the reports prepared by the defendant airlines were held admissible upon offer by the plaintiff and against the objections of the defendant.

■ The substantial objection must rest, therefore, upon the contention that the trial judge did not have before him sufficient evidence to justify his conclusion that these reports were made in the *regular* course of business of the doctors. All other requirements of the statute, including the making of a record at the time of the occurrence or "within a reasonable time thereafter," seem fully complied with. On their face, the letters appear to contain the careful, restrained professional reports of honest practitioners and there is nothing in the record to suggest anything to the contrary. Defendant was careful to make no question as to the contents of the letters beyond its formal objection of hearsay. Thus they would seem to come well within the purpose of the statute "to facilitate admission of records which experience has shown to be quite trustworthy." Palmer v. Hoffman, supra, 318 U.S. at page 113, 63 S.Ct. at page 480.[2]

It is true that no one got on the witness

2. If, indeed, they do not go further in this regard than the statute requires. "All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility." 28 U.S.C. § 1732, second sentence.

stand to say that a doctor commissioned to make an examination would make some sort of report of what he was employed to do. Since that formal bit is lacking in express language, though it is surely implicit in the nature of the transactions involved and is actually not questioned by defendant, must we hold the trial judge in error for making and acting upon the natural inference? The statute was designed to bring the realities of business and professional practice into the courtroom in usable form; we do not think it should be interpreted in a dryly technical way, contrary to ordinary habits and customs, to reduce sharply its obvious usefulness. The only other course open to the doctors if they were to complete their commissions would have been to indulge in some form of oral report; that they followed a more trustworthy, but obviously normal, practice should not militate against admissibility. If defendant had had any real doubts as to what the doctors would have said on the stand, it would have taken advantage of the court's offer of delay for their summoning. We think the judge's holding justified and natural, and the admission not erroneous. See Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 183 F.2d 467, 473, and cases cited; United States v. Mortimer, 2 Cir., 118 F.2d 266, certiorari denied Mortimer v. United States, 314 U.S. 616, 62 S.Ct. 58, 86 L.Ed. 496; Ulm v. Moore-McCormack Lines, supra; Freedman v. Mutual Life Ins. Co. of N. Y., supra.

Defendant cites and relics upon Masterson v. Pennsylvania R. Co., 3 Cir., 182 F. 2d 793. There the court held it error to admit letters of physicians to the railroad's chief medical examiner. Although the letters are not reproduced in the opinion, the statement made as to them suggests several factual differences from those at bar.[3] Moreover, the court actually affirmed the plaintiff's verdict and judgment through application of the doctrine of harmless error. If available under the circumstances, this doctrine would surely be

as applicable here as in the cited case; for plaintiff's medical history was thoroughly canvassed below in lengthy testimony from two medical experts for the plaintiff and one for the defendant, covering nearly one hundred pages of printed testimony, not to speak of three X-rays and four "plates." But there is necessarily doubt as to its use with reference to the admission of evidence which the jury may have deemed important; and we prefer to rest decision upon broader principles deducible from the remedial statute itself. In so far as the majority opinion tends to cast doubt upon the availability of physicians' letters as regular business entries we find ourselves in agreement with Judge Goodrich, concurring in the result, but saying, "I think the decisions on this statute show a tendency to confine it too narrowly." 182 F.2d at page 798.

Affirmed.

CHASE, Circuit Judge (dissenting).

If my brothers are right, it would seem both that recovery may now be had under the Federal Employers' Liability Act as though it were a sort of Workmen's Compensation Act providing, upon proof of injury, simply for the assessment of damages by a jury, and that hearsay is admissible to prove damages.

Nothing was shown to prove the appellant negligent but that the trap door was not partially opened when the foot pedal was stepped on and that the release mechanism was "rusty." How "rusty" was not shown and, since it was more or less exposed to the weather, some rust was to be expected. However that may have been, the catch bolt did withdraw as it should, or else the appellee couldn't have pulled up the door, and the only unusual occurrence was the failure of the mechanism to start the upward movement which might have been because the door was jammed so tight that no pressure which the lever could exert at the point of its contact could move

---

**3.** There appears to have been doubt as to whether the physicians themselves prepared the letters and when; one physician appears to have disavowed the letter attributed to him; and there apparently was much of hearsay in the letters, of the kind the jury here was told not to accept as fact.

it. Without more, the jury could only speculate, as a matter of law, in finding a defect in the release mechanism. Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819; Lynch v. Delaware, L. & W. R. Co., 2 Cir., 58 F.2d 177. Moreover, the only change wrought by the supposed defect was the elimination of the aid of a facility for opening the door. Its absence put no one in danger and the appellant was free to let the door remain shut and to let the passengers use the steps on the adjacent car, or to open, or try to open, the door manually. That he would be hurt if he elected to open the door by hand was such a remote possibility that it can hardly be called so foreseeable as to require precautionary measures by the employer to prevent either the occasion for manual opening or any conceivable consequences of it.

Consequently, the regular inspection and repair by the railroad, which were not shown to have been in any respect inadequate, discharged its duty to the appellant, in the absence of proof that after the door stuck the railroad had had a fair chance to discover and remedy that condition or the cause of any failure on the part of the release mechanism to overcome it. Even if it can be said that the release mechanism was proved to be out of repair, there was no evidence whatever either to show that the defect had been brought to the actual notice of the railroad or that the condition had existed long enough to charge it with constructive notice. Without some proof of either kind of notice, an essential element to show the railroad's negligence was lacking, and its motion for a directed verdict should have been granted. Hatton v. New York, N. H. & H. R. Co., 1 Cir., 261 F. 667; Schilling v. Delaware & H. R. Corporation, 2 Cir., 114 F.2d 69; Great Northern Ry. Co. v. Johnson, 8 Cir., 207 F. 521.

To hold that the letters, especially the one from one doctor to the other, were admissible as records stamped with the likelihood of that accuracy which makes regular business entries admissible under the federal statute, 28 U.S.C.A. § 1732, and the similar state statutes cited, seems to be a rather complete disregard of what was decided in Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645. We should, on the contrary, follow Masterson v. Pennsylvania R. Co., 3 Cir., 182 F.2d 793, which preserves the safeguards which must be respected to determine correctly whether the statute applies.

I would reverse and remand.